997 So.2d 941 (2008)
Kenneth READUS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01618-COA.
Court of Appeals of Mississippi.
April 22, 2008.
Rehearing Denied September 30, 2008.
Certiorari Denied January 8, 2009.
Julie Ann Epps, Canton, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before MYERS, P.J., IRVING and ISHEE, JJ.
ISHEE, J., for the Court.
¶ 1. Kenneth Readus was convicted on one count of murder and one count of aggravated assault and sentenced to life imprisonment plus twenty years to run *942 concurrently all in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, he appeals asserting:
I. The trial court erred in granting the State's jury instruction S-7 which combined the definitions of both deliberate design murder and depraved heart murder.
II. The verdict of murder and/or aggravated assault was unsupported by sufficient evidence or, alternatively, against the overwhelming weight of the evidence.
Finding no error, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2. Readus was indicted for the murder of his wife, Sherry, and the aggravated assault of his stepson, Marlow Jackson. Readus and his wife lived in an apartment in Canton, Mississippi with their two children and two of Sherry's children from a previous marriage.
¶ 3. On the night of March 29, 2002, Readus returned from work between 11:00 p.m.-12:00 a.m. to find that Sherry was not home. Sherry had not returned from completing her shift at St. Dominic Hospital in Jackson. When Readus asked Sherry's daughter, Yuvonda, where her mother was, she replied that she thought her mother was still at work. Sherry did not return home until early the next morning. According to Yuvonda, Readus confronted Sherry and asked her where she had been. Sherry responded by telling him that it was none of his business. Subsequently, an argument ensued, and Sherry called for help from her son, Marlow.
¶ 4. According to Marlow, upon entering the room, he saw Readus standing over his mother with his fists balled up. Marlow stated that his mother was on the ground holding her face. Marlow admitted that he picked up a broom to defend his mother, but it is disputed as to whether he actually struck Readus with the broom. It is undisputed, however, that Marlow demanded that Readus leave the apartment. Readus gestured toward the door, but he did not leave. Instead, he stated, "I'm tired of this," and subsequently drew a gun out of his pocket and pointed it at Marlow. Marlow testified that Readus shot three times: (1) once at him, (2) once at his mother, and (3) once into the kitchen. Readus claimed that he only intended to fire the gun in the air. He alleged that the gun discharged accidentally when Marlow tried to grab the gun out of his hand. Readus claimed that the shots were fired as he and Marlow struggled to gain control of the gun. According to Yuvonda, when Marlow reached for the gun, Readus shot him. The extent of an alleged struggle between Readus and Marlow is disputed in the record. After witnessing Readus shoot her brother, Yuvonda stated that she fled for safety. While running out of the room, she heard the second shot. This second shot was later determined to be the fatal round which ended Sherry's life.
¶ 5. The next door neighbor, Doris Lewis, heard the shots coming from the Readuses' home. Shortly thereafter, Lewis witnessed Readus leave the apartment. When Lewis went over to investigate, she found Sherry lying on the floor unconscious with a gunshot wound to her stomach and blood coming from the back of her head. She also saw Marlow sitting up in a corner of the room with a gunshot wound to his upper chest. Lewis called the police for assistance and stayed until an ambulance arrived. Both Marlow and Sherry were transported to the hospital. Marlow was treated for his injuries. Sherry was pronounced dead on arrival.
¶ 6. Readus turned himself into police later that evening. After signing a Miranda *943 waiver, he voluntarily gave a statement to the police. In his statement, Readus admitted to pulling out a loaded .25 caliber pistol and shooting his wife and his stepson. Readus claimed that his decision to shoot came after his wife hit him with a broom, and they started "tussling." After the shooting, Readus stated that he left the apartment, got into his car, and drove to his mother's house. He admitted that he hid the pistol in his mother's storage room. Shortly thereafter, he decided to turn himself in.
¶ 7. Readus was indicted on June 10, 2002, for one count of murder and one count of aggravated assault. He was tried on April 7, 2004. At the conclusion of the case, the jury was given instructions for murder which included the definitions of both murder by deliberate design and depraved heart murder. The jury was also given an instruction for the lesser offense of manslaughter, as well as a separate instruction for the aggravated assault charge. Readus was found guilty of both murder and aggravated assault and given a life sentence and a twenty-year concurrent sentence in the custody of the MDOC. From that conviction, he now appeals.

ANALYSIS

I. Whether the trial court erred in granting the State's jury instruction S-7.
¶ 8. Readus contends that the trial court erred by granting jury instruction S-7 which defined the elements of murder. It instructed the jury that:
Murder is the killing of a human being, with malice aforethought, not in necessary self defense, and without the authority of law, by any means or by any manner, when done with premeditated and deliberate design to effect the death of the person killed or when done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of any particular individual.
Readus contends that this instruction was improper because it failed to instruct the jury that it was required to unanimously agree on either deliberate design murder or depraved heart murder. Readus argues that, without such an instruction, there was no way to ensure that the jurors were unanimous as to the elements supporting their verdict of murder. He, therefore, contends that his Sixth Amendment right to a unanimous verdict was violated. The State contends that an evidentiary basis existed for the jury instruction and that precedent exists for allowing the jury instruction.
¶ 9. As previously stated, the jury instruction S-7 allowed the jury to convict Readus of murder if the killing was of deliberate design, Mississippi Code Annotated section 97-3-19(1)(a) (Rev.2006), or if the killing evinced a depraved heart, Mississippi Code Annotated section 97-3-19(1)(b) (Rev.2006). This Court has previously recognized that the State may submit jury instructions that enable the jury to convict either for deliberate design murder or for depraved heart murder. Lett v. State, 902 So.2d 630, 636(¶ 19) (Miss.Ct. App.2005). Further, the Mississippi Supreme Court has held that it is not error to grant a jury instruction which combines the elements of deliberate design murder with the elements of depraved heart murder as stated in Mississippi Code Annotated sections 97-3-19(1)(a) and (1)(b). See Schuck v. State, 865 So.2d 1111, 1119-20 (¶¶ 19-20) (Miss.2003); Catchings v. State, 684 So.2d 591, 599 (Miss.1996). The Court has rejected the argument that the two instructions are mutually exclusive, explaining that the depraved heart murder section has been coalesced with the deliberate *944 design murder section. Catchings, 684 So.2d at 599. "[E]very murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life." Id. (quoting Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992)). Therefore, the trial court did not err by granting an instruction that combined deliberate design murder with depraved heart murder.
¶ 10. A trial court may refuse a proffered jury instruction when there is no foundation in the evidence to support the instruction. Coleman v. State, 804 So.2d 1032, 1037(¶ 24) (Miss.2002) (citing Heidel v. State, 587 So.2d 835, 842 (Miss.1991)). Readus argues that there was no evidence to support a jury instruction for murder as the State offered no evidence that he acted with deliberate design or depraved heart.
¶ 11. We are unable to accept Readus's argument that the State failed to produce evidence showing that he was guilty of either deliberate design murder or depraved heart murder. The State produced evidence showing Readus was the person who shot Marlow and shot and killed Sherry. In fact, Readus himself admitted that he perpetrated the shooting. At the very least, the State produced evidence of depraved heart murder by establishing that while Readus was engaged in an argument with his wife, he fired shots inside an apartment that contained unarmed individuals and several children. The classic example of depraved heart murder is shooting into a crowd of people. Lett, 902 So.2d at 637(¶ 21). It is within the province of the jury to draw reasonable inferences from the evidence based on their experience and common sense. Lewis v. State, 573 So.2d 719, 723 n. 2 (Miss.1990). We find that Readus's argument is without merit.

II. Whether the verdict of murder and/or aggravated assault was unsupported by sufficient evidence or, alternatively, against the overwhelming weight of the evidence.
¶ 12. Readus argues that the evidence presented by the State was insufficient as a matter of law to support a conviction of both murder and aggravated assault. He contends that the only possible inference that can be drawn from the evidence is that the shooting took place accidentally during a struggle between Readus and the victims. He alternatively contends that it was the product of self-defense. Given this evidence, Readus argues that no fair-minded juror could find him guilty of murder or aggravated assault. Readus also contends that the verdict was against the overwhelming weight of the evidence. Because these claims have a different standard of review, they will be analyzed separately.
¶ 13. In reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not determine whether from the evidence we would have voted to convict or acquit. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). Rather, we view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied. Id. The proper remedy for insufficient evidence is for the Court to reverse and render. Id.
¶ 14. After a thorough review of the record, construing the evidence in favor of the prosecution, we find that a rational juror could conclude beyond a reasonable doubt that Readus was guilty of both murder and aggravated assault. The jury was instructed on murder, being defined as either deliberate design murder or depraved *945 heart murder, manslaughter, and aggravated assault. At the very least, the evidence in this case tends to show that Readus acted recklessly in the commission of an imminently dangerous act and with extreme indifference to human life, thereby supporting the verdicts of both depraved heart murder and aggravated assault. As previously stated, Mississippi Code Annotated section 97-3-19(1)(b) (Rev.2006) defines depraved heart murder as follows:
The killing of a human being without the authority of law by any means or in any manner shall be murder ... [w]hen done in the commission of an act eminently [sic] dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]
Mississippi Code Annotated section 97-3-7(2) (Rev.2006) states that a person is guilty of aggravated assault if he:
(a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]
¶ 15. Here, the State produced evidence showing that Readus fired a gun inside of an apartment that contained two unarmed individuals, as well as several children. The State also established that Readus's firing of the gun resulted in the death of Sherry and serious bodily injury to Marlow. This was confirmed by the two eyewitnesses, Marlow and Yuvonda. Further, Readus himself admitted pulling out the gun and firing it inside the apartment. We fail to see how this is any different from the classic example of depraved heart murder of shooting into a crowd. Though Readus claims that the gunshots were accidental, his statement to police contradicts that assertion. On the day that he was questioned by police Readus stated, "we were still tussling and I pulled the pistol and shot Marlow Jackson and Sherry Readus." He never expressed to police that he did not mean to shoot the two victims. Further, Readus testified at trial that he pulled out the gun with the intention of shooting it. In either event, whether the shooting was accidental was a question for the jury. In light of the evidence presented, we find that a rational juror could conclude that Readus committed both depraved heart murder and aggravated assault.
¶ 16. In reviewing a weight of the evidence issue, we will not reverse unless the verdict is "so contrary to the overwhelming weight of evidence that to allow it to stand would sanction an unconscionable injustice." Bush, 895 So.2d at 844(¶ 18). The reviewing court weighs the evidence in the light most favorable to the verdict. Id. If the verdict is contrary to the overwhelming weight of the evidence, the proper remedy is a new trial, but this remedy is reserved for "exceptional cases in which the evidence preponderates heavily against the verdict." Id. (citation omitted). Unlike reversal for insufficiency of the evidence, reversal based on the weight of the evidence does not mean that acquittal was the only appropriate remedy, but the Court, sitting as a hypothetical "thirteenth juror," disagrees with the jury's assessment of conflicting testimony and believes that a new trial is necessary. Id.
¶ 17. In the present case, we find nothing that would lead this Court to disagree with the jury's assessment of the conflicting testimony with which it was presented. Two eyewitnesses testified that Readus *946 fired a gun inside an occupied apartment. Readus did not deny this fact, and he did not deny that he pulled out the gun with the intention of shooting it. He only contends that his testimony, as well as that of Yuvonda, showed that Sherry and Marlow were accidentally shot. It was the jury's job to weigh this testimony, as well as the credibility of the witnesses, in reaching their verdict. Viewing the record as a whole and in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice. We find no merit to this issue.

CONCLUSION
¶ 18. For the foregoing reasons, the judgment of the trial court is affirmed.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AND CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS TO RUN CONCURRENTLY ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR.