CARLTON, J.,
 

 for the Court.
 

 ¶ 1. A Warren County Circuit Court jury found David Welch guilty of the murder
 
 [1]
 
 of Cedric Griffin. The trial court sentenced Welch to life in the custody of the Mississippi Department of Corrections (MDOC). Welch appeals alleging that the evidence was not sufficient to support his conviction, and the verdict is against the overwhelming weight of the evidence. Finding no error, we affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the morning of April 21, 2006, Griffin was shot and killed in Welch’s trailer in Vicksburg, Mississippi. Welch called 911 claiming that he had shot and killed an intruder who accosted him in his home with a sawed-off shotgun. Authorities found Griffin’s body on the back steps of Welch’s house with one gunshot wound to the chest and one gunshot wound to the head.
 

 ¶ 3. At trial, Deputy Jay Ghrigsby with the Warren County Sheriffs Department testified that he responded to Welch’s 911 call. He testified that after advising Welch of his
 
 Miranda
 

 [2]
 

 rights, Welch told him that when he got out of the shower, he noticed a black male standing in his bedroom brandishing a shotgun. Welch then stated that a struggle ensued, and the gun went off. Welch was able to get the shotgun back from the black male, load it and shoot the man again.
 

 ¶ 4. Ray Lewis, a criminal investigator with the Warren County Sheriffs Department, testified that he found the twenty-gauge single-action shotgun used to shoot Griffin in Welch’s kitchen. He stated that when he picked up the gun, a clear liquid, which appeared to be water, came out of the barrel. No fingerprints were found on the gun.
 

 ¶ 5. Dr. Stephen Hayne performed the autopsy on Griffin and testified that the cause of death was due to the two gunshots Griffin received: one to the chest and one fired at close range to the head. In Dr. Hayne’s opinion, Griffin was alive when he received the second gunshot wound to the head. Dr. Hayne further testified that:
 

 [Mjost importantly the only injuries, other than two gunshot wounds, are the abrasions to the face and to the right back. And those would be consistent
 
 *927
 
 with an individual falling. I have no other injuries indicative of a struggle. I can’t exclude it, but I don’t have evidence to support the struggle.
 

 ¶ 6. Deputy Mike Traxler with Warren Count Sheriffs Department testified that Welch provided several statements to him on the day of the shooting. In Welch’s first statement, he claimed that when he came out of the bathroom “there was a black man standing by [his] bedroom with a shotgun pointed it at [him][,] and [Welch] grabbed [the gun] and we tussled.... ” Welch told Deputy Traxler that the gun went off; a shell fell out; and he reloaded the gun and shot “the son-of-a-bitch.” Welch dénied knowing the intruder and denied ever seeing the sawed-off shotgun before. However, Welch later admitted that he knew Griffin and that he owned the sawed-off shotgun used to kill Griffin.
 

 ¶ 7. Bobby Miller, a former roommate of Welch’s and a next-door neighbor, testified that he and Welch used drugs together. He testified during cross-examination that Griffin told him that [Griffin] held a gun to Welch’s head a few days earlier because Welch owed him money. Miller testified that on the night before the shooting, he and Griffin went to Welch’s home and that the three drank beer and used drugs. Miller testified that he fell asleep in Welch’s house, and in the morning, he awoke to a loud noise. He stated that upon waking, he saw Griffin fall face down in the bedroom. He stated that he then saw Welch reload a shotgun and shoot Griffin in the head while Griffin crawled on his hands and knees toward the back door. Miller testified that he did not know what had happened in Welch’s bedroom before the shooting.
 

 ¶ 8. Tabitha Brooks testified on behalf of the defense. She stated that she was friends with Griffin and Welch. She testified that a few days before the shooting, she and. Griffin were at Welch’s trailer when Griffin told her to go to the other room and turn up the radio. Griffin went into Welch’s bedroom with a gun. Brooks went into the bedroom and witnessed Griffin holding a gun in one hand and a pillow in the other. Brooks testified that Griffin told her that Welch owed him money.
 

 ¶ 9. Welch took the stand in his own defense. Welch stated that Griffin threatened him over money Griffin claimed Welch owed him. However, Welch denied that he owed Griffin any money. Welch testified that he knew about Griffin’s prior robbery conviction and gang affiliation and that he was scared of Griffin. Welch testified that the night before the shooting, he came home to find Griffin and Miller in his house and that Griffin and Miller soon left in search of cocaine. However, Welch stated that when he woke up, he found Griffin and Miller asleep in his living room. He stated that he then made some coffee and went back to his bedroom, to wait for the banks to open so he could pay Griffin and get Griffin out of his life.
 

 ¶ 10. Welch testified that shortly after making coffee, Griffin came to his bedroom and demanded the money. Welch told Griffin he would get Griffin the money as soon as the -banks opened. Welch stated that he then went to take a shower, and while looking for a towel, he turned and saw Griffin pointing the sawed-off shotgun at him. He claimed the two struggled for the gun, and the gun accidentally discharged. It was then that Welch stated that he noticed a shotgun shell on the floor, which he used to reload the gun and shoot Griffin in the head.
 

 ¶ 11. During cross-examination, Welch provided testimony that conflicted with his direct testimony. Welch claimed that after Griffin received the first gunshot wound, Griffin then reached into his pants’ pocket while trying to get up and that
 
 *928
 
 Welch then shot Griffin again. However, Welch also admitted that when he reloaded the shotgun and shot Griffin the second time, Griffin was crawling away from him toward the back door.
 

 ¶ 12. On February 23, 2007, a jury found Welch guilty of murder. The trial court sentenced Welch to life in the custody of the MDOC. Welch timely appeals alleging that: the evidence was insufficient to support his conviction, and the verdict is against the overwhelming weight of the evidence. We find no error and affirm the trial court’s judgment.
 

 DISCUSSION
 

 I. Sufficiency of the Evidence
 

 ¶ 13. Welch contends that under the supreme court’s holding in
 
 Weathersby v. State,
 
 165 Miss. 207, 209, 147 So. 481, 482 (1933), he was entitled to a directed verdict as the evidence at trial did not substantially contradict his account of events that he killed Griffin in self-defense. In turn, the State argues that Welch was not entitled to a directed verdict in this case because the
 
 Weathersby
 
 rule does not apply and because sufficient evidence exists to support Welch’s conviction for murder.
 

 ¶ 14. The appropriate inquiry on appeal in considering the trial court’s denial of a motion for a directed verdict implicates the sufficiency of the evidence.
 
 Taggart v. State,
 
 957 So.2d 981, 985-86(¶8) (Miss.2007). In reviewing issues of legal sufficiency, the Court does not “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Rather, the Court will “view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied.”
 
 Readus v. State,
 
 997 So.2d 941, 944(¶ 13) (Miss.Ct.App.2008) (citation omitted). “The proper remedy for insufficient evidence is for the Court to reverse and render.”
 
 Id.
 
 (citation omitted).
 

 ¶ 15. In
 
 Weathersby,
 
 the supreme court articulated the following rule:
 

 It has been for some time the established rule in this state that where the defendant or the defendant’s witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the [S]tate, or by the physical facts or by the facts of common knowledge.
 

 Weathersby,
 
 165 Miss. at 209, 147 So. at 482.
 

 ¶ 16. In
 
 Johnson v. State,
 
 987 So.2d 420, 424-25(¶ 10) (Miss.2008), the supreme court expounded on the
 
 Weathersby
 
 rule, stating that: “Where the
 
 Weathersby
 
 rule applies and the defendant’s version affords an absolute legal defense, the defendant is entitled to a directed verdict of acquittal.”
 
 Id.
 
 (citation omitted).
 

 ¶ 17. However, the
 
 Johnson
 
 court explained that the
 
 Weathersby
 
 rule would not apply when: the defendant’s testimony or the testimony of an eyewitness satisfies the elements of murder or manslaughter; the defendant’s version is unreasonable or contradicted by the physical evidence; or the defendant, following the slaying, gives conflicting versions of the circumstances surrounding the killing, or initially denies the act.
 
 Id.
 
 at 425(¶ 11). The
 
 Johnson
 
 court concluded that if the
 
 “Weathersby
 
 rule is inapplicable (i.e., the defendant does not secure a directed verdict of acquittal), it then becomes a jury issue as to whether to believe or not believe the defendant’s
 
 *929
 
 testimony of how the slaying occurred, and to either convict or acquit.”
 
 Id.
 

 ¶ 18. We cannot find that the trial court erred in denying Welch’s motion for a directed verdict on the basis of the
 
 Weathersby
 
 rule.
 
 See id.
 

 [3]
 

 Here, both Welch’s and Miller’s eyewitness testimonies provided a valid basis for Welch’s murder conviction.
 
 See id.
 
 During cross-examination, Welch admitted that after he shot Griffin the first time in the chest and while Griffin was on the floor and crawling away toward the back door, he reloaded his gun and shot Griffin in the head with the intention of killing him.
 

 ¶ 19. In turn, Miller testified that he fell asleep in Welch’s house and awoke to a loud noise. Miller stated that the first thing he saw when he woke up was “[Griffin] fall from [Welch’s] room into the door ... and [onto] the floor” and then “[Griffin] got up and tried to crawl [to the back door to where his car was parked], and [Welch] shot [Griffin] again.” We find that this testimony provided a valid basis for a conviction of deliberate-design murder, which therefore renders the
 
 Weathersby
 
 rule inapplicable in this case.
 
 See
 
 Miss.Code Ann. § 97-3-19(1)(a).
 

 ¶ 20. Additionally, we find that the physical evidence contradicts Welch’s theory of self-defense.
 
 See Johnson,
 
 987 So.2d at 425(¶ 11). Dr. Hayne testified that Griffin died due to the two gunshots he received: one to the chest and one fired at close range to the head. Dr. Hayne also testified that: “most importantly the only injuries, other than two gunshot wounds, [were] the abrasions to the face and to the right back. And those wounds [are] consistent with the individual falling. I have no other injuries indicative of a struggle. I can’t exclude it, but I don’t have evidence to support the struggle.”
 

 ¶ 21. Furthermore, Investigator Lewis, testified that he found no fingerprints on the gun used to kill Griffin, but that a clear liquid that appeared to be water came out of the barrel. Such testimony conflicts with Welch’s contention that Griffin first held the gun on him and that he and Griffin then struggled over possession of the gun. Again, this physical evidence contradicts Welch’s theory of self-defense and renders the
 
 Weathersby
 
 rule inapplicable.
 

 ¶ 22. Upon our review, we find that the record reflects that Welch provided several conflicting statements as to the circumstances surrounding Griffin’s death. First, Deputy Ghrigsby testified that Welch told him at the scene of the crime that when he got out of the shower “he noticed a black male standing in his bedroom brandishing a shotgun. He then stated that a struggle ensued, and the gun went off. He was able to get the shotgun back from the black male, load it, and shoot him again.”
 

 ¶ 23. Second, Welch provided conflicting statements to Deputy Traxler which were recorded and played for the jury. Welch initially told Deputy Traxler that he did not know the intruder and that the intruder broke into Welch’s home with the sawed-off shotgun. Welch denied knowing Griffin or having seen the sawed-off shotgun before.
 
 [4]
 
 However, in his third state
 
 *930
 
 ment to Deputy Traxler, Welch admitted that he knew Griffin.
 

 ¶ 24. Third, we note inconsistencies in Welch's trial testimony. Welch testified that when he shot Griffin the second time that Griffin “was trying to get up.” Conversely, Welch also admitted at trial that when he shot Griffin the second time that Griffin was crawling away from him toward the back door. Clearly, ample evidence exists in the record that Welch gave substantially inconsistent statements and testimony as to the circumstances of Griffin’s death which, again, renders the
 
 Weathersby
 
 rule inapplicable in this case.
 

 ¶ 25. Finally, in examining the evidence in the light most favorable to the prosecution, we find that a rational juror could find Welch guilty of deliberate-design murder beyond a reasonable doubt.
 
 See Readus,
 
 997 So.2d at 944(¶ 13). We find that the physical evidence, Dr. Hayne’s testimony, Miller’s eyewitness testimony, and Welch’s own inconsistent statements and testimony provided sufficient evidence of Welch’s deliberate design to kill Griffin.
 
 See Davis v. State,
 
 891 So.2d 256, 259(118) (Miss.Ct.App.2004) (affirming defendant’s murder conviction and finding the
 
 Weath-ersby
 
 rule inapplicable when “[a] reasonable, hypothetical juror could have been convinced that there was no need to continue aiming the shotgun at [the victim], as he presented no reasonably imminent threat in his unarmed, prone, and seriously wounded state”). For the reasons stated, we find that the trial court did not err in denying Welch’s motion for a directed verdict.
 

 ¶ 26. This issue lacks merit.
 

 II. Weight of the Evidence
 

 ¶ 27. Welch asserts that this Court should reverse his conviction and remand for a new trial or, in the alternative, reduce Welch’s murder conviction to manslaughter and remand for resentencing because the evidence failed to warrant a guilty verdict for murder. In turn, the State submits that substantial proof existed to support Welch’s conviction for murder.
 

 ¶ 28. This Court has articulated the following standard of review in determining whether a jury verdict is against the overwhelming weight of the evidence:
 

 “[T]his Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.”
 
 Collins v. State,
 
 757 So.2d 335, 337(¶ 5) (Miss.Ct.App.2000) (quoting
 
 Dudley v. State,
 
 719 So.2d 180, 182(¶9) (Miss.1998)).... “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal.”
 
 [Id.]
 
 (quoting
 
 Dudley,
 
 719 So.2d at 182 (¶ 9)).
 

 Carle v. State,
 
 864 So.2d 993, 998(¶18) (Miss.Ct.App.2004).
 

 ¶ 29. In addressing this assignment of error, we note that factual disputes at trial “are properly resolved by the jury and do not mandate a new trial.”
 
 Jones v. State,
 
 791 So.2d 891, 895(¶ 12) (Miss.Ct.App.2001) (quoting
 
 Benson v. State,
 
 551 So.2d 188, 193 (Miss.1989)). As noted previously, the supreme court has stated that when the
 
 “Weatkersby
 
 rule is inapplicable (i.e., the defendant does not secure a directed verdict of acquittal), it then becomes a jury issue as to whether to believe or not believe the defendant’s testimony of how the slaying occurred, and to either convict or acquit.”
 
 Johnson,
 
 987 So.2d at 425(¶ 11).
 

 ¶ 30. Here, the trial court provided the jury the option of rendering the following verdicts in Welch’s case: (1) guilty of deliberate-design murder, (2) guilty of heat-
 
 *931
 
 of-passion manslaughter, or (3) not guilty. In considering Welch’s theory of self-defense, the jury had before it the eyewitness testimonies of Welch and Miller; Dr. Hayne’s medical testimony, and the physical evidence. The jury found Welch guilty of murder.
 
 See Hodge v. State,
 
 823 So.2d 1162, 1166(¶ 16) (Miss.2002) (stating that “[w]hether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made for the jury”).
 

 ¶ 31. In accepting as true the evidence that supports the jury’s guilty verdict, we cannot find that the jury’s guilty verdict is so against the overwhelming weight of the evidence so as to sanction an unconscionable injustice.
 
 See Carle,
 
 864 So.2d at 998(¶ 18). As a result, we cannot find that the trial court abused its discretion in denying Welch’s motion for a new trial. Moreover, we decline to accept Welch’s invitation to set aside the jury’s verdict of murder and render a judgment of conviction of manslaughter.
 
 See Hodge,
 
 823 So.2d at 1166(¶ 16).
 

 ¶ 32. This issue lacks merit.
 

 ¶ 33. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Miss.Code Ann. § 97-3-19(l)(a) (Rev.2006) ("The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases: When done with deliberate design to effect the death of the person killed, or of any human being[]”).
 

 [2]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 467-68, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [3]
 

 .
 
 Cf. Cummings v. State,
 
 271 So.2d 407, 409 (Miss.1972)
 
 (Weathersby
 
 rule applicable; Cummings discharged);
 
 Childs v. State,
 
 240 So.2d 611, 615 (Miss.1970) (Weathersby rule applicable; Childs discharged);
 
 Lomax v. State,
 
 205 Miss. 635, 642, 39 So.2d 267, 269 (1949)
 
 (Weathersby
 
 rule applicable; Lomax discharged);
 
 Westbrook v. State,
 
 202 Miss. 426, 435, 32 So.2d 251, 253 (1947)
 
 (Weathersby
 
 rule applicable; Westbrook discharged).
 

 [4]
 

 . During his trial testimony, Welch admitted that he owned the sawed-off shotgun and that he kept it under his bed.