CARLTON, J.,
 

 for the Court.
 

 ¶ 1. On June 27, 2007, a Hinds County jury found Joe Lee Brunner guilty of house burglary, aggravated assault, armed robbery, and auto theft. Brunner timely appeals his convictions and sentences, alleging the following assignments of error: (1) the trial court abused its discretion in denying Brunner’s requested jury instruction, and (2) the evidence was insufficient to support his convictions. We find no error and affirm the trial court’s judgment.
 

 FACTS
 

 ¶ 2. On the morning of March 7, 2006, Lorea May, eighty-one years old, saw her husband Otho May off to his job as a roofing contractor before she returned to bed. That same morning the Mays’ adult daughter, Marilyn May, left for classes at the University of Mississippi Medical Center. As Lorea drifted back to sleep, she noticed an intruder coming out of a bedroom across the hall from her bedroom. The intruder then entered her bedroom and began rummaging through a bowl of keys. The light was on in the hall, but not in Lorea’s room. With her head down, Lorea pretended to sleep for approximately ten minutes as she watched the intruder. Lorea was not wearing her eyeglasses at any time while the intruder was inside her home.
 

 ¶ 3. When the intruder walked back into the hallway, Lorea asked him what he was doing. The intruder responded that Otho had sent him to get the keys to the couple’s Cadillac. The intruder told Lorea that Otho was outside. Lorea told the intruder to bring Otho into the house. Lo-rea then retrieved a gun from her hus
 
 *647
 
 band’s nightstand, but the intruder quickly wrenched the gun away from her.
 

 ¶4. The intruder then began beating Lorea in the head with an unknown object. Lorea begged for her life. At this point, the intruder demanded and took Lorea’s purse along with the gun and a set of keys. He then pushed Lorea’s walker away from her and ripped the bedroom telephone from the wall. After he left, Lorea dragged herself to another room and called 911. Before Lorea left her home in an ambulance, she told Detective Perry Tate of the Jackson Police Department that her attacker once worked for her husband, but she gave no name. As the investigation commenced,' Otho informed law enforcement that he recently had fired an employee, Brunner, for stealing on the job. Law enforcement then developed Brunner as a suspect.
 

 ¶ 5. Hours later, Lorea identified Brun-ner as her attacker from a photographic lineup. At trial, Lorea again identified Brunner as her attacker. Lorea testified at trial that Brunner had worked for Otho in his roofing business, but she had seen Brunner only on one other occasion when Otho took money to Brunner.
 

 ¶ 6. Otho testified that Brunner worked for him off and on for approximately five or six years in his roofing business and that he considered him a “good worker.” Otho also testified that Brunner stopped at the Mays’ home on more than one occasion to obtain his pay, but Brunner never entered the home. Otho stated that at no time did he suggest to Lorea that Brunner was the one who had assaulted her; she identified Brunner on her own from a photographic lineup.
 

 ¶ 7. Additionally, at trial, Deputy Milton Twiner, with the Jackson Police Department, testified that on March 8, 2006, at approximately 9:40 a.m., he responded to a request from a rural resident to investigate the abandonment of a black Cadillac. The resident reported that a six-foot tall, slender, black male had left the Cadillac near the front of her home. Law enforcement soon identified the abandoned car as the Mays’ missing Cadillac. Shortly after investigating the abandoned Cadillac, Deputy Twiner received a report concerning a stolen pickup truck from the parking lot of the local Walmart, a parking lot easily accessible on foot from the location where the Cadillac was found.
 

 ¶ 8. At trial, Brunner testified in his own defense. During his testimony, Brunner stated that he “rented” the Cadillac on March 7, 2006, from Clinton Pierre, a former employee of Otho’s and a known drug user. Brunner testified that he ghve Pierre $50 and a gram of powder cocaine for the car rental. Brunner’s girlfriend, Leshandre Martin, also testified that Brunner obtained the Cadillac from Pierre on March 7, 2006. Martin testified that she, Brunner, and their five-month-old infant rode around in the Cadillac and visited people from Jackson to Hazlehurst for most of the day on March 7, 2006.
 

 ¶ 9. Brunner stated that the next day, on March 8, 2006, he rode with Pierre to Hazlehurst in the hopes of renting the Cadillac again. Brunner testified that upon reaching Hazlehurst, the Cadillac stopped running. In response, Brunner admitted that he left the Cadillac and walked to Walmart and “stole [a] truck and ... went back to Jackson.” Brunner also testified that either late in the evening on March 7, 2006, or early in the morning on March 8, 2006, he first learned that Jackson Police Department detectives were looking for him. He testified that he waited until March 14, 2006, to surrender to law enforcement.
 

 ¶ 10. On June 28, 2007, a jury found Brunner guilty of all charges against him.
 
 *648
 
 The trial court sentenced Brunner to fifty years on Count I, house burglary;
 
 [1]
 
 forty years on Count II, aggravated assault;
 
 [2]
 
 eighty years on Count III, armed robbery;
 
 [3]
 
 and ten years on Count IV, auto theft.
 
 [4]
 
 Because the victim in this case was over age sixty-five, Brunner’s sentences on Counts I, II, and III were enhanced.
 
 [5]
 
 All the sentences were ordered to run consecutively in the custody of the Mississippi Department of Corrections (MDOC).
 

 ¶ 11. Brunner timely appeals his convictions and sentences, alleging the following assignments of error: (1) the trial court abused its discretion in denying Brunner’s requested jury instruction, and (2) the evidence is insufficient to support his" convictions. Finding no error, we affirm the trial court’s judgment.
 

 DISCUSSION
 

 I. Brunner’s Requested Jury Instruction
 

 ¶ 12. Brunner argues that the trial court committed reversible error in refusing to grant his requested instruction, which he claims provided the jury with the “heart of his defense theory, that of mis-identification.” In turn, the State argues that the jury instructions which were given, taken as a whole, presented Brunner’s theory of misidentification and that the trial court committed no error when it denied Brunner’s requested jury instruction.
 

 ¶ 13. We apply the following standard of review for challenges to jury instructions: “In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole[; w]hen so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Davis v. State,
 
 909 So.2d 749, 752(¶ 11) (Miss.Ct. App.2005) (citation omitted). Moreover, “[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Smith v. State,
 
 802 So.2d 82, 88(¶ 20) (Miss.2001) (citations omitted).
 

 ¶ 14. “On the specific issue of jury instructions dealing with eyewitness identification, the supreme court has stated that ‘the general instruction given to the jury to the effect that the State has the burden of proving each element of the offense charged beyond a reasonable doubt,’ includes the misidentification issue.”
 
 Id.
 
 (citing
 
 Robinson v. State,
 
 473 So.2d 957, 963 (Miss.1985)).
 
 [6]
 

 ¶ 15. Here, in five of the given jury instructions — specifically, instructions C — 4, C-7, C-9, C — 11, and C-13 — the trial court instructed the jury that the State bore the burden of proving each element of each offense charged beyond a reasonable doubt, which included the identity of
 
 *649
 
 the perpetrator. Specifically, the State possessed the burden of proving beyond on a reasonable doubt that on March 7, 2006, Brunner committed the crimes of house burglary, aggravated assault, armed robbery, and auto theft.
 
 See Smith,
 
 802 So.2d at 88(¶ 20). Moreover, the jury instructions in this case extended beyond the general instructions required by the supreme court in
 
 Smith
 
 regarding the State’s burden of proof, as instruction C-2 warned the jury to also “consider the witnesses] ability to observe the matters as to which he or she has testified....”
 
 See id.
 

 ¶ 16. Instruction C-2 provided the following:
 

 You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. You should carefully scrutinize all the testimony given, the circumstances under which each witness testified, and every matter in evidence that tends to show whether a witness is worthy of belief. Consider each witnesses] objectivity, state of mind, demeanor and manner while on the stand.
 
 Consider the witnesses] ability to observe the matters as to which he or she has testified,
 
 and whether he or she impresses you as having an accurate recollection of these matters. Consider the extent to which it is contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently; and innocent misreeollection, like failure or recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. After making your own judgment, you will give the testimony of each witness such credibility, if any, as you may think it deserves.
 

 Again, instruction C-2 extended beyond the general instruction required by the supreme court in
 
 Smith,
 
 as it also instructed the jury to determine the credibility and weight of the witness’s testimony.
 
 See id.
 

 ¶ 17. We note that defense counsel’s proffered instruction D-10, which the trial court refused, reads as follows:
 

 In evaluating the identification testimony of a witness you should consider your assessment of the credibility of any witness in general, and should also consider, in particular, whether the witness had an adequate opportunity to observe the person in question at the time or times about which the witness testified.
 

 You may consider in that regard, such matters as the length of time the witness had to observe the person in question, the prevailing conditions at that time in terms of visibility or distance and the like, and whether the witness had known or observed the person at earlier times. You may also consider the circumstances surrounding the identification itself, including, for example, the manner in which the defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the next opportunity the witness had to observe the defendant. If, after examining all of the testimony and evidence in this case, you have a reasonable doubt as to the identity of the defendant as the perpetrator of the offense charged, you must find Joe Brunner Scott [sic] not guilty.
 

 
 *650
 
 ¶ 18. In reading the jury instructions as a whole, in light of
 
 Smith,
 
 we find that the instructions encompassed the issue of mis-identification.
 
 See id.
 
 The instructions placed the burden on the State to prove beyond a reasonable doubt that Brunner committed each element of the offenses charged. Additionally, instruction C-2 warned the jury to “[consider the witnesses] ability to observe the matters as to which he or she has testified.... ”
 

 ¶ 19. This issue lacks merit.
 

 II. Sufficiency of the Evidence
 

 ¶ 20. Brunner contends the State failed to prove beyond a reasonable doubt that he entered the Mays’ home on March 7, 2006, and committed the crimes for which he was charged because of the “extraordinarily weak identification of Lorea....” In turn, the State argues that legally sufficient evidence exists in the record to support the jury’s verdict.
 

 ¶ 21. In reviewing an issue of legal sufficiency, the Court does not “ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Rather, the Court will “view the evidence in the light most favorable to the prosecution and determine whether a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied.”
 
 Readus v. State,
 
 997 So.2d 941, 944(¶ 13) (Miss.Ct.App.2008) (citation omitted). “The proper remedy for insufficient evidence is for the Court to reverse and render.”
 
 Id.
 
 (citation omitted).
 

 ¶ 22. In addressing this assignment of error, we note that factual disputes at trial “are properly resolved by the jury and do not mandate a new trial.”
 
 Jones v. State,
 
 791 So.2d 891, 895(¶ 12) (Miss.Ct.App.2001) (quoting
 
 Benson v. State,
 
 551 So.2d 188, 193 (Miss.1989)). In this case, the State presented evidence that Brunner committed the crimes at issue. In turn, Brunner put forth his theory of misidentification both through his direct testimony and through his vigorous cross-examination of Lorea regarding her ability to recognize her attacker. In viewing the evidence in the light most favorable to the prosecution, we find ample evidence in the record to support the jury’s guilty verdicts.
 

 ¶ 23. Specifically, we note the following facts. Brunner testified that he worked for Otho and that Otho fired him for stealing on the job. Weeks later, on March 7, 2006, an intruder severely beat and robbed Lorea and stole the Mays’ Cadillac. Brun-ner testified that on the same day Lorea was beaten and robbed, he “rented” a Cadillac which law enforcement later identified as the Mays’ stolen Cadillac. Brunner further testified that on March 8, 2006, he drove the rented Cadillac to Hazlehurst and stole a pickup truck from a Walmart parking lot.
 

 ¶ 24. In turn, Lorea testified that on March 7, 2006, she saw an intruder in her home. Though she was not wearing her eyeglasses at the time of the attack, Lorea observed the intruder in her bedroom for at least ten minutes. The intruder then severely beat Lorea on the head; when she begged for her life, the intruder demanded that she give him her purse. The intruder then took Lorea’s purse, a gun, and a set of the Mays’ keys.
 

 ¶ 25. At trial, defense counsel vigorously cross-examined Lorea about her vision and her ability to see and identify her attacker without her eyeglasses. On her way to the emergency room, Lorea identified her attacker as someone who had once worked for her husband. Several hours later at the hospital, Lorea identified Brunner, based upon her own independent
 
 *651
 
 recollection, in a photographic lineup provided by law enforcement.
 

 ¶ 26. We have carefully reviewed the record in this case. We note that any factual disputes, such as Lorea’s ability to see her attacker, fell within the province of the jury.
 
 Jones,
 
 791 So.2d at 895(¶ 12). Finally, in examining the evidence in a light favorable to the prosecution, we find that a rational juror could find Brunner guilty of the crimes charged beyond a reasonable doubt.
 
 See Readus,
 
 997 So.2d at 944(¶ 13).
 

 ¶ 27. This issue lacks merit.
 

 ¶ 28. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, HOUSE BURGLARY, AND SENTENCE OF FIFTY YEARS; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF FORTY YEARS; COUNT III, ARMED ROBBERY, AND SENTENCE OF EIGHTY YEARS; AND COUNTY IV, AUTO THEFT, AND SENTENCE OF TEN YEARS, WITH ALL SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE and MYERS, P.JJ., GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. IRVING, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.
 

 [1]
 

 .
 
 See
 
 Miss.Code Ann. § 97-17-23 (Supp. 2008).
 

 [2]
 

 .
 
 See
 
 Miss.Code Ann. § 97-3-7(2) (Supp. 2008).
 

 [3]
 

 .
 
 See
 
 Miss.Code Ann. § 97-3-79 (Rev.2006).
 

 [4]
 

 .
 
 See
 
 Miss.Code Ann. § 97-17-42 (Supp. 2008).
 

 [5]
 

 .
 
 See
 
 Miss.Code Ann. §§ 99-19-351 to - 357(Rev.2007).
 

 [6]
 

 .
 
 See also Clubb v. State,
 
 350 So.2d 693, 697 (Miss.1977);
 
 Hines v. State,
 
 339 So.2d 56, 58 (Miss.1976);
 
 Ragan v. State,
 
 318 So.2d 879, 882 (Miss.1975).