925 So.2d 878 (2005)
Ronald POWELL, Appellant
v.
STATE of Mississippi, Appellee.
No. 2004-KA-00635-COA.
Court of Appeals of Mississippi.
October 11, 2005.
Rehearing Denied January 17, 2006.
Certiorari Denied April 6, 2006.
*879 Michael Lee Knapp, Thomas M. Fortner, Jackson, Lynn Watkins, attorneys for appellant.
Office of the Attorney General by Deirdre McCrory Eleanor, Faye Peterson, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. Ronald Powell was convicted by a Hinds County jury of burglary of a building and was sentenced to serve seven years in the custody of the Mississippi Department of Corrections. On appeal, Powell argues that the trial court erred in admitting certain items into evidence that were not disclosed by the State during discovery and in denying his proposed jury instruction on eyewitness testimony. Finding no reversible error, we affirm Powell's conviction.

FACTS
¶ 2. On the night of August 18, 2002, Robert Finch stopped by his place of employment at a local tire store to use the restroom.[1] As he approached the building, Finch noticed that a truck was parked on the side of the building, and on the back of the truck were several items that had been taken from the store. Upon entering the store, Finch was confronted by a man with a gun. Finch testified that when the man, who was approximately three feet away from him, asked him what he was doing in the store, he informed the man that he was there to use the restroom. When Finch inquired as to the reason why the man was in the building, the man responded that he was "taking [him] some stuff." The man then allowed Finch to use the restroom and loaded several tires onto his truck before leaving the store. Thereafter, Finch called the police and notified the store's owner, Timothy Naylor, of the burglary.
¶ 3. Naylor testified that after arriving at the store, he was standing outside when he observed a truck pass by that matched the description of that driven by the man who had burglarized the store earlier that night. Naylor followed the truck to a local gas station and observed the driver attempting to sell some of the tires that had been taken during the burglary. Naylor left the gas station and notified the police. *880 When Naylor returned, the driver of the truck, who was later identified as Ronald Powell, had been taken into police custody. Thereafter, Finch was taken to the gas station where he immediately identified Powell as the man whom he had seen burglarizing the store.
¶ 4. Powell, however, gave a different version of events. At trial, he testified that he was on his way to a party when he stopped to assist a stranded motorist. Powell further testified that he agreed to load items from the motorist's truck onto his own, and then drove to the gas station to wait for the arrival. Powell testified that he was arrested by the police while waiting on the motorist at the gas station. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Discovery Violations
¶ 5. In his first two assignments of error, Powell argues that the trial court erred in allowing certain items into evidence that were not disclosed by the State during discovery. He specifically contends that the State's failure to tender a record of his prior false pretense conviction and several photographs depicting the stolen property constituted a discovery violation under Uniform Circuit and County Court Rule 9.04. In support of his argument, Powell has also filed a motion with this Court, seeking to supplement the record with certain documents provided to him by the State during discovery, namely a copy of his National Criminal Information Center (NCIC) report and several documents which make reference to the photographs at issue. By an order entered contemporaneously with this opinion, we grant Powell's motion. Therefore, we consider the foregoing evidence in our resolution of the issues before us.
¶ 6. We first address Powell's argument that the trial court erred in allowing the State to use his prior false pretense conviction to impeach him. Powell contends that because the NCIC report provided by the State failed to set forth the conviction, the State failed to comply with his discovery request. The State, however, maintains that because Rule 9.04 only requires the disclosure of a defendant's criminal history, and not necessarily certified copies of convictions, the NCIC report provided to Powell constituted sufficient notice of his false pretense conviction.
¶ 7. According to the record, Powell's attorney submitted a written discovery request for a "[c]opy of the criminal record of the [d]efendant." In response, the prosecution provided the defense with a copy of Powell's NCIC report which set forth various charges for which Powell had been arrested. The NCIC report, however, failed to expressly or implicitly reference Powell's false pretense conviction.
¶ 8. During trial, over strenuous objection, the State was allowed to impeach Powell with a certified copy of an abstract of the conviction.[2] In allowing the State to proceed with the impeachment of Powell, the trial court erroneously ruled that no disclosure on the part of the State was required since the conviction was being used for impeachment purposes. Powell never brought to the court's attention that *881 its ruling contravened the clear wording of Rule 9.04 A.3, which provides that a "[c]opy of the criminal record of the defendant, if proposed to be used for impeachment" must be tendered to the defendant as part of pretrial discovery.
¶ 9. In support of his argument, Powell cites Box v. State, 437 So.2d 19 (Miss.1983) as authority. Although the Box case first set forth the appropriate procedures and remedies for the trial court to consider in resolving discovery violations, that procedure is now reflected in Rule 9.04 of the Uniform Circuit and County Court Rules. McCullough v. State, 750 So.2d 1212, 1217 (¶ 18) (Miss.1999) (citing Duplantis v. State, 644 So.2d 1235 (Miss.1994)).
¶ 10. If the prosecution fails to comply with its disclosure obligations, Rule 9.04 provides in part:
If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and
2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.
3. The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.
URCCC 9.04 I.
¶ 11. We find that the prosecution was clearly in violation of Rule 9.04 for failing to provide Powell with a copy of his false pretense conviction. Because the rule specifically mandates the disclosure of a defendant's criminal record when used for impeachment purposes, Powell was entitled to notice that his false pretense conviction would be used against him. We also find that the trial court erred when it allowed the State to impeach Powell without complying with the requirements of Rule 9.04.
¶ 12. After Powell was convicted, he filed a motion for a new trial in which he averred that the court erred in allowing the State to impeach him because he was not given a copy of the impeaching document. During the hearing on the motion, the State again insisted that it had complied with Rule 9.04 by tendering to Powell a copy of his NCIC report. Powell continued to insist that the State failed to tender, during discovery, a copy of his false pretense conviction. However, Powell never gave the trial court a copy of the NCIC report tendered to him by the State, and never specifically said to the court that the conviction was not referenced or reflected in the NCIC report, as claimed by the State.
¶ 13. While the trial court clearly erred in allowing the State to use an impeaching document that was not disclosed, we cannot find that this error requires us to reverse. There are two reasons for this position. First, we cannot put the trial court in error regarding a matter that was never brought to the court's attention. As stated, Powell never brought to the court's attention that the conviction was not listed in the NCIC report as the State claimed. Therefore, the court never had a chance to *882 rule on whether the State's tendering of the NCIC report satisfied the State's obligation under Rule 9.04. Additionally, it would have been preferable for Powell to have brought to the court's attention, when the matter first arose during trial, that the court's ruling  that a copy of Powell's conviction of false pretense was not required to be given to Powell during discovery because it was impeachment material  was at odds with the prosecution's obligation under Rule 9.04 A.3. Had Powell done so, the court would have been compelled to proceed in accordance with the dictates of Rule 9.04 I. Second, a violation of Rule 9.04 by the prosecution does not necessarily result in a reversal of the defendant's conviction.
¶ 14. The Mississippi Supreme Court has repeatedly held that a violation of Rule 9.04 is considered harmless error unless it affirmatively appears from the entire record that a violation caused a miscarriage of justice. See Wyatt v. City of Pearl, 876 So.2d 281, 284 (¶ 10) (Miss.2004) (citing Buckhalter v. State, 480 So.2d 1128 (Miss. 1985)). Although Powell contends that the State's use of the false pretense conviction to impeach him was devastating to his credibility with the jury, we cannot say that, based on the facts of this case, a miscarriage of justice occurred. This is not a circumstantial evidence case; Powell was caught in the criminal act of which he was convicted. Therefore, we find that the State's violation constituted harmless error. However, we find that the State's erroneous representation to the trial court, as well as to this Court during oral argument, is indefensible. Surely, the State should have taken the time to read the NCIC report to confirm the State's assertion that the NCIC report did in fact contain a reference to Powell's false pretense conviction. We expect better from the State.
¶ 15. Powell next contends that the trial court erred in admitting certain photographs into evidence. The State counters that Powell received notice of the photographs' existence; therefore, a discovery violation did not occur.
¶ 16. During its examination of Naylor, the prosecution sought to introduce several photographs into evidence that depicted stolen property recovered from Powell's truck. A bench conference was held, and the trial judge allowed the photographs to be admitted into evidence.[3] Thereafter, during a subsequent hearing on Powell's motion for a new trial, the prosecution offered the following undisputed argument in support of the judge's prior ruling which allowed the photographs into evidence:
BY MR. ALEXANDER [Prosecutor]: First of all, as far as the photographs are concerned, your Honor, the discovery which was given to counsel opposite listed six photographs. It said six photographs. At no point in time did Mr. Jones ask me for those photographs. As a matter of fact, in open court he told the Court that I just thought he wasn't going to use them because he never brought them over to me.
On the morning of the trial I showed him the photographs. And then when the Court asked-prior to beginning voir dire the Court asked are there any things that need to be brought up. Mr. Jones said nothing at that time either. He didn't say he wanted to keep the photographs out. He didn't file a motion ore tenus in limine to keep out the photographs.
He was put on notice that the photographs did, in fact, exist, so he waived that right. And the Court had a hearing, *883 a bench trial during the trial outside the presence of the jury about those photographs before they went in, and the Court properly ruled that he was put on notice and that they should come in.
¶ 17. We have reviewed the documents provided by the State during discovery, and we find that the documents effectively put Powell on notice of the existence of the photographs. Similarly, according to the prosecution's undisputed recollection of events, Powell was given an opportunity to view the photographs on the morning of trial. Therefore, he cannot now claim prejudice or unfair surprise by the images depicted therein. As a result, we find that the trial court did not err in allowing the photographs into evidence.

(2) Jury Instruction D-4
¶ 18. Powell next challenges the trial court's denial of jury instruction D-4, his proposed instruction on eyewitness testimony. He specifically contends that the court's denial of the instruction deprived him of the right to present his theory of misidentification to the jury.[4]
¶ 19. Instruction D-4 states:
The Court instructs the jury that whether Ronald Powell was the person who committed the crimes in this case is a matter for you, the Jury, to decide. The State has the burden of proving beyond a reasonable doubt the identity of Ronald Powell as the perpetrator of the crime. If you are not convinced from the evidence beyond a reasonable doubt that Ronald Powell was the person who committed this crime, you must find him Not Guilty.
Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.
In appraising the identification testimony of a witness you should consider the following:
(1) Are you convinced that the witness had the capacity and adequate opportunity to observe the offender and to give an adequate description of the offender upon which to base a subsequent identification?
(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of their own recollection?
(3) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether they are truthful, and consider whether they had the capacity and opportunity to make a reliable observation on the matter covered in their testimony.
If any of the above factors are considered by you, they should be considered along with all of the other matters, facts, and things in evidence in this case and in light of you [sic] own human experience, common sense and sound judgment.
If, after considering all of the above, you have a reasonable doubt that Ronald Powell was the person who committed these crimes, then it is your sworn duty to find him Not Guilty.
*884 ¶ 20. In support of his argument that the trial court should have granted instruction D-4, Powell directs our attention to Warren v. State, 709 So.2d 415, 421 (¶ 28) (Miss.1998), where the Mississippi Supreme Court held that a trial court's failure to give an identification instruction was reversible error because the defendant's identification was based solely upon the testimony of a single witness. We find that Powell's reliance upon Warren is misplaced. Unlike the defendant in Warren, Powell's identification and subsequent conviction did not rest entirely upon the testimony of a single witness. Instead, the State offered the testimony of three witnesses: Finch, Naylor, and arresting officer Angela Hart, all of whom positively identified Powell as the perpetrator. Similarly, the State presented evidence that property stolen from the store was recovered from Powell's truck, which provided additional independent evidence of his involvement in the crime. Powell's argument to the contrary is without merit.
¶ 21. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF BURGLARY OF A BUILDING AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Although the store had closed for the night, the lights were still on inside the building.
[2] The abstract shows that Powell entered a guilty plea to the false pretense charge in Jackson Municipal Court on August 19, 2002. The record also reflects that a bench conference was held in response to Powell's objection to the false pretense conviction. Although Powell claims that the trial court did not allow him an opportunity to make a record of the bench conference, we find that he fails to offer evidence that a request was made by him for an on-the-record conference and that the request was denied by the trial court.
[3] The bench conference was not made part of the record.
[4] Powell argues that Finch's initial physical description of the robber as "a black man" warranted the giving of instruction D-4. Powell contends that Finch initially gave police a generalized physical description of the perpetrator, and did not crystallize his identification until after observing him in the police car. The record however does not support Powell's contention. Finch testified that he described Powell as "a black guy about five-eight to five-nine in height," that "looked to be in his mid-thirties."