BARNES, J.,
for the Court.
¶ 1. David Antonio Grayer was convicted of burglary of a dwelling by a Harrison County jury. He was sentenced as a habitual offender to twenty-five years in the custody of the Mississippi Department of Corrections. Grayer perfected this appeal following the denial of his post-trial motions for new trial and reconsideration of sentence. Grayer alleges that the trial court erred in the following particulars: (1) the denial of his pre-trial motion to suppress the identification evidence as unduly prejudicial; (2) the refusal to grant his identity jury instruction; and (3) in granting the State’s motion to amend the indictment. Finding no reversible error, this Court affirms his conviction and sentence.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Alfred Mack Demás returned home in the early morning hours of April 4, 2003, to find a broken window in the front *907 portion of his Gulfport home. Demás testified that he noticed the broken window even before he entered his driveway. When he entered the driveway he saw an individual in the process of leaving the back yard of the home. Demás testified that he opened the door to his vehicle and yelled to the individual to stop; however, the individual ran into a nearby alleyway. Demás testified that he then pursued the individual in his car.
¶ 3. When Demás next caught sight of the individual, the individual was riding a bicycle. Demás testified that his automobile’s high-beam headlights were illuminated while he followed the suspect, and that he was able to get a good look at the side of the man’s face as he looked back several times to see how closely he was being followed. Demás also testified that upon arriving at his home, he was able to get a good look at the individual’s face with the aid of illumination from his home’s floodlights and his automobile’s headlights. The fleeing individual was able to elude Demás by going between two houses. While in pursuit of the suspect, Demás placed a 911 call for assistance on his cellular telephone and offered this testimony regarding the contents of the call: “When I called on the cell phone, I told them my house had been broken into and it was a n. on a bike with a black jogging suit. The exact words that I said.”
¶ 4. After losing sight of the suspect, Demás returned home where he was met by Fred Gaston of the Gulfport Police Department, who had responded to the 911 call. Gaston testified that one of the first things he noticed was that the glass was broken out of the front window of the home. Inside the house, items such as televisions and VCRs were stacked in a room at the very back of the house next to the open back door. Numerous other items had been removed from the house and placed in the back yard. The interior of the house had been ransacked and a number of old coins and several watches were missing. Gaston testified that while he was still conducting his investigation of the crime scene he received a dispatch notification over his radio that another officer had made contact with a suspect matching the description that Demás had given.
¶ 5. Wayne H. Payne II of the Gulfport Police Department testified that on the morning in question he was on K9 patrol when he received the call about a burglary in process with the victim chasing the suspect, who was described as a black male wearing dark gray or black clothing. The call also reported that some' coins and watches were missing from the crime scene. Payne testified that he drove to the area and rode around looking for anyone who fit the description. Two blocks from the crime scene he saw a black male on foot who fit the description. Payne testified that the call about the burglary had come in at 1:56 a.m. and that it was approximately 2:10 a.m. when he saw this individual. Payne testified that he exited his patrol car and spoke with the individual, who appeared highly intoxicated and identified himself as David Grayer. Grayer had several watches in his hands and coins in his pocket. Payne testified that he asked Gaston to have Demas come to the location for a positive identification. Payne’s testimony regarding what transpired upon Demas’s arrival at the location was as follows:
We were standing next to my patrol vehicle. The victim drives up, exited his vehicle. He walked up. He says, “[Y]eah, that’s the guy broke into my house.” The victim was pretty angry. He begins yelling. We get them separated again. As the victim is walking *908 away, Mr. Grayer says, “I’m sorry,” and some more yelling goes on, and then, “I was wrong for what I did.”
¶ 6. Demás testified that he was allowed to examine a brown bag containing the items that were taken from Grayer at the scene, and that one of the items was a retirement pin that Demás had received upon his retirement from a local bank. Additionally, Demás identified all of the other items from the bag as his personal belongings. Grayer rested without putting on a defense.
ANALYSIS

1. Motion to suppress the eyewitness . identification

¶ 7. Grayer contends that the show-up identification was suggestive and that the lower court erred in refusing to grant his motion to suppress the identification testimony at trial. In support of his contention, Grayer directs this Court’s attention to the landmark United States Supreme Court case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Biggers holds that the following factors are to be considered in determining whether, under the totality of circumstances, a show-up identification was reliable even though the confrontation procedure was suggestive: (1) the opportunity of the witness to view the accused at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’ prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Biggers, 409 U.S. at 199— 200, 93 S.Ct. 375; Nicholson v. State, 523 So.2d 68, 72 (Miss.1988).
¶ 8. In his analysis of the Biggers factors, Grayer argues that the show-up identification was unreliable under the totality of the circumstances in that: (1) Demás only saw the face of the perpetrator for between two and five seconds; (2) Demás was a sixty-seven-year-old man who had not had his eyesight checked in twenty years, who viewed the perpetrator from inside his vehicle from ten to fifteen yards away, after having a few cocktails; (3) the prior description provided by Demás only made a pejorative reference to the perpetrator’s race and gave a vague description of his clothing; and (4) no doubt was expressed as to the certainty of the identification; and (5) the length of time between the crime and confrontation was approximately fourteen minutes. Grayer sums up his argument by contending that since De-mas was unable to describe anything other than the race and attire of the perpetrator, the show-up identification was unduly suggestive and the lower court erred in not suppressing it.
¶ 9. The trial court found that the show-up identification was suggestive only in that Grayer was the only individual present for viewing at the time. Otherwise, the court found that the totality of the circumstances surrounding the identification rendered the identification rehable.
¶ 10. The Mississippi Supreme Court held in Magee v. State, 542 So.2d 228, 231 (Miss.1989), that the standard of review for suppression hearing findings in pretrial identification cases is whether, considering the totality of the circumstances, substantial credible evidence supports the trial court’s findings. Only in the absence of substantial credible evidence supporting the findings can those findings be disturbed. Id. This Court finds that there is substantial credible evidence supporting the trial court’s findings. Grayer’s contentions notwithstanding, all of the Biggers factors favor the reliability of the identification. It is clear from the record that the trial court considered those factors in mak *909 ing its determination not to suppress the identification testimony, and that the court’s findings are backed by substantial credible evidence. This Court finds no reversible error on this issue.

2. Refused jury instruction

¶ 11. Grayer contends that the trial court’s refusal to grant his identification instruction constitutes reversible error because his identification rests on the basis of a single witness. His arguments in support of this contention, based upon Warren v. State, 709 So.2d 415 (Miss.1998), and Davis v. State, 568 So.2d 277 (Miss. 1990), are identical to those made in Francis v. State, 791 So.2d 904 (Miss.Ct.App.2001), a case previously decided by this Court. In that case this Court held as follows:
Francis argues that, because there was only one witness to the robbery, the trial court erred in refusing to grant an identification jury instruction. The standard applicable for reviewing jury instructions is as follows:
In determining whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found. Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (citing Collins v. State, 691 So.2d 918 (Miss.1997)). Applying this standard of review to this case, we find the circuit court acted properly in its decision.
Francis, citing Davis v. State, 568 So.2d 277 (Miss.1990), and Warren [v. State, 709 So.2d 415 (Miss.1998) ], reasons that it was error not to grant him an identification instruction. In Davis, the trial judge struck a portion of the identification instruction requested by Davis. Davis, 568 So.2d at 280. On appeal, the Mississippi Supreme Court held that, although the stricken portion of the instruction accurately stated the law and could have been granted, the failure to grant the entire instruction was harmless error because the deleted portion simply clarified that portion that was granted, and Davis’s guilt was proven “beyond a reasonable doubt by the overwhelming weight of [the] evidence.” Id. at 280-281.
In Warren, the trial court refused to allow identification instructions. On appeal, the Mississippi Supreme Court held that the trial court’s failure to instruct the jury on the law of identification was reversible error because the case turned on the identification of Warren by a single witness. Warren, 709 So.2d at 421(¶ 28). Here, the distinction is that the identification did not rest solely on the testimony of Wilkes. Francis also disclosed to Lt. Walker where he had hidden the gun used to commit the robbery and led the police to that location. The trial court committed no error in failing to give an identification instruction.
Francis, 791 So.2d at 908 (¶¶ 10-12). This Court finds the same distinction applicable to the case at bar as the Francis court found applicable to that case, i.e., Grayer’s identification did not rest solely on the testimony of a single witness. Grayer was in possession of property stolen from the crime scene and apologized to the victim for his actions. As in Francis, the trial court committed no error in refusing to give the identification instruction.

3. Motion to amend the indictment

¶ 12. Grayer argues that it was error for the trial court to grant the State’s motion to amend the original indictment, which stated that the burglary took place on or about March 4, 2003. He *910 contends that his defense counsel was prepared to defend based on that charging instrument. He claims that his counsel was “clearly” surprised by the motion to amend the indictment on the day of trial to charge that the burglary occurred on April 4, 2003. He argues that at the very least the trial court should have granted a continuance to give him an opportunity to prepare a different defense.
¶ 13. The argument on the motion to amend the indictment proceeded as follows:
STATE: Your Honor, the State does have its motion to amend the indictment.
COURT: It will be sustained, to change the date of the occurrence. There being no indication that there’s an alibi issue for the change of date or for the date of March 4th. So therefore it will be sustained. You’ll be allowed to amend.
[[Image here]]
DEFENSE: Judge, can I put something on the record.
COURT: Sure you can.
DEFENSE: Judge, we object to them amending the indictment at this time, the day of trial. Judge, not only is the indictment wrong, but the narrative is wrong also, Your Honor. We’ve ... prepared for trial based on the narrative and the indictment.
COURT: The narrative in the indictment?
DEFENSE: No, no, sir. I’m sorry. The discovery that I have, the detective investigative report has that this crime occurred on March 4, '03.
COURT: That’s what the indictment says.
DEFENSE: That is correct, Your Hon- or.
COURT: And the officer testified April 4, didn’t he?
DEFENSE: Yes, sir.
STATE: Your Honor, that was the detective’s narrative, and I think the detective had made a mistake, but if you look on all the officer’s reports, the date is listed April 4th. And in the underlying circumstances and facts it’s listed as April 4th, and the defendant was arrested April 4th.
COURT: Well, certainly the detective’s inappropriate notation or inaccurate notation of March 4th would be subject to cross-examination and whatever you can do as far as attacking the credibility of his testimony, that can be used if he had the wrong date on there, but the others — the amendment will be allowed as to amending the indictment to show that the true date was April 4th.
DEFENSE: Well, Judge, my client pled not guilty to this charge, and he was given his charging instrument which was the indictment.
COURT: Yes, sir.
DEFENSE: We looked at the indictment and said we’re not guilty of that. We didn’t break into anybody’s house on March the 4th. We looked at the narrative. That has March 4th on it, and on the day of trial, the [Sjtate’s going to come in here and say, oh, oh, it happened on April 4th. We’re sorry about that. Judge, I think we should be given an opportunity to at least prepare to defend on a different date now.
COURT: All right. You have your record. Anything else?
DEFENSE: Nothing else, Your Honor.
¶ 14. In Conley v. State, 790 So.2d 773, 781(¶ 16) (Miss.2001), the Mississippi Supreme Court held that the ques *911 tion of whether an indictment is fatally defective is an issue of law and enjoys a relatively broad standard of review. Trial courts have no authority to grant substantive amendments to indictments. Baine v. State, 604 So.2d 258, 260 (Miss.1992). An amendment to change the date on which the offense occurred is one of form only, unless time is an essential element or factor in the crime. Id. at 261. Grayer makes no claim that time is an essential element or factor in the crime with which he is charged. Knowing full well that the crime occurred on April 4, 2003, Grayer gambled that he could come into court on the day of his trial and offer up a defense that he did not commit the crime on March 4, 2003, and that at the very least, he would be granted a continuance. This Court finds that the amendment to the indictment changing the date of the crime was one of form only.
¶ 15. • THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, ISHEE AND ROBERTS, JJ., CONCUR.