KING, Justice,
for the Court:
¶ 1. Jermell Victory was convicted in the Circuit Court of Coahoma County of the murder of Darron Sykes and of possession of a firearm by a convicted felon. The circuit court sentenced Victory, respectively, to life and ten years in the custody of the Mississippi Department of Corrections (MDOC), with the sentences to run consecutively. Victory raises one issue on appeal: “Whether the trial court erred in refusing to grant appellant Jermell Victory’s proposed jury instruction on eyewitness identification where said instruction embodied his theory of the case.” We find that the circuit court did not err by denying Victory’s proposed jury instruction.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 26, 2010, Victory was indicted for Sykes’s murder and possession of a *371 firearm by a convicted felon. The murder occurred on November 16, 2009, in Jones-town, Mississippi. Terrance Ewing and Mario Brunt[1] were in the vehicle with Sykes at the time of the shooting. Brunt was driving, Sykes was in the front passenger seat, and Ewing was in the back seat. According to Ewing and Brunt, the trio had just left the liquor store. Brunt had exited on Jones Street and turned onto Mosley Street, where he had stopped at a stop sign. According to Brunt, Victory emerged from behind a tree, walked around to the passenger’s side of the vehicle, and began shooting into the car. Ewing also testified that Victory emerged from behind a tree and began shooting on the passenger side of the car.
¶ 3. During the shooting, Officers Otha Hunter, III, and Derrell Washington of the Jonestown Police Department were patrolling the area when they heard the gunshots. They proceeded toward the gunfire. When they arrived on Mosley Street, Officer Hunter saw a black male on the passenger side of the car, firing into the vehicle. Officer Hunter recognized the suspect immediately as Victory. Officer Washington testified that he did not see the suspect’s face because he was activating the police siren. Upon seeing the police officers, the suspect fled on foot.
¶ 4. After the suspect fled, the police officers approached the vehicle, ordered Brunt and Ewing out of the car, handcuffed them, and placed them in the back of the patrol car. The police officers notified the Coahoma County Sheriffs Office of the incident and requested an ambulance. Sykes was pronounced dead at the scene. The police officers searched Sykes and found an unloaded weapon in a holster on his body. No other weapons were found at the scene.
¶ 5. While at the scene of the shooting, the police officers questioned Brunt and Ewing about the shooter and, at the time, neither Brunt nor Ewing identified the shooter. Officer Hunter pulled Officer Washington aside, stated that he had recognized the shooter, and identified the shooter as Victory. After Ewing and Brunt were taken into custody, they confessed that they had seen the shooter’s face and identified the shooter as Victory. During the trial, the two explained that they initially did not identify Victory as the shooter because they were afraid that Victory would harm them.
¶ 6. Sisters Latrice Wright and Ebony Coleman were walking toward Mosley Street before the shooting occurred. Wright testified that she heard someone yell Victory’s name, and then she heard gunshots. Upon hearing the gunshots, both sisters ran for cover. Wright stated that she saw Victory shooting into the passenger’s side of a car. Coleman also testified that she saw Victory shooting into Brunt’s car. In their statements to police, the sisters both claimed that they had seen a champagne-colored or silver car pull up next to Brunt’s car. At trial, Coleman recalled seeing the second car. Wright initially did not recall the second car, but, after reviewing her statement, she remembered seeing a champagne-colored car. Contrary to the sisters’ testimony, Brunt and Officer Washington testified that they did not see any other vehicles.[2]
*372 ¶ 7. Collar Lumpkin, a Jonestown resident who had known Victory for approximately eight years, testified for the State as follows. On the night of the shooting, Lumpkin was at his grandmother’s house on Jones Street. Lumpkin stated that Victory walked past his grandmother’s house between 7:00 p.m. and 8:00 p.m., carrying a weapon by his side. Twenty to thirty minutes later, Victory walked past the house again. This time, Victory stopped, greeted Lumpkin, and asked Lumpkin to come over. Lumpkin refused to see what Victory wanted. When asked if he had heard any gunshots that night, Lumpkin answered “no” and stated that someone had informed about the shooting later that evening.
¶ 8. Two alibi witnesses — Dalcour Matthews and Keith Johnson — testified on Victory’s behalf. Matthews, a friend of Victory’s for six years, testified that he and Victory had helped push a car out of the mud earlier that day, after which they went their separate ways to change clothes. At the time of the shooting, Matthews stated that he was headed to the store, where he saw Victory at the corner of Main Street and Church Street. Matthews also saw Johnson at the store. Johnson testified that, at the time of the shooting, he was also headed to Bryant Grocery on Main Street. According to Johnson, Victory was waiting for him at the stop sign on Main Street and Church Street. Johnson testified that when they heard the gunfire, he and Victory left the store and headed in the opposite direction, toward Victory’s sister’s home.
¶ 9. The police department searched the town for Victory and later found him at a girlfriend’s house. Officer Washington apprehended Victory as he tried to escape through the back door of the home. According to Officer Washington, Victory pleaded “Come on, man. Let me make it.” Officer Washington informed Victory that he was suspected of murder and then placed him under arrest. Deputy Herbert Thomas testified that a gunshot-residue test performed on Victory was negative.[3]

Eyewitness-Identification Jury Instruction

¶ 10. Victory proposed the following jury instruction regarding eyewitness identification:
The Court instructs the jury that in reaching your verdict you are to consider all of the evidence concerning the entire case and the circumstances surrounding the crime. One of the issues in this case is the identification of JER-MELL VICTORY as the perpetrator of the crime. As with each element of the crime charged, the State has the burden of proving identity beyond a reasonable doubt, and before you may convict JER-MELL VICTORY you must be satisfied beyond a reasonable doubt of the accuracy of the identification of JERMELL VICTORY. If, after considering all of the evidence concerning the crime and the witness’ [sic] identification of JER-MELL VICTORY as the person who committed the crime, you are not convinced beyond a reasonable doubt he is the person who committed the crime, then you must find him not guilty. Identification testimony is an expression of belief or impression by the witness. You must judge its value and reliability from the totality of the circumstances surrounding the crime and the subsequent identification. In appraising the *373 identification testimony of a witness, you should consider the following:
1) Did the witness have an adequate opportunity to observe the offender?
2) Did the witness observe the offender with an adequate degree of attention?
3) Did the witness provide an accurate description of the offender after the crime?
4) How certain is the witness of the identification?
5) How much timed [sic] passed between the crime and the identification?
If, after examining all of the testimony and the evidence, you have a reasonable doubt that JERMELL VICTORY was the person who committed the crime, then you must find JERMELL VICTORY not guilty.
The State objected to the instruction, arguing that an identification instruction is appropriate only when there is only one eyewitness. The circuit court agreed and denied Victory’s proposed instruction.

Conviction & Sentence

¶ 11. On November 17, 2010, Victory was found guilty of murder and possession of a firearm by a convicted felon. He was sentenced to life and ten years in the custody of the MDOC, respectively, with those sentences to run consecutively. On November 23, 2010, Victory filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The same day, the circuit court entered an order denying Victory’s motion. Aggrieved, Victory timely filed his notice of appeal with this Court.
STANDARD OF REVIEW
¶ 12. Whether to grant or deny proposed jury instructions is within the sole discretion of the circuit court. Newell v. State, 49 So.3d 66, 73 (¶ 20) (Miss.2010). Thus, this Court reviews the grant or denial of jury instructions for an abuse of discretion. Id. No one instruction should be singled out. Id. Accordingly, the Court reviews the jury instructions as a whole to determine whether an error has occurred. Id. “A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Id. at 74 (¶ 20) (quoting Hearn v. State, 3 So.3d 722, 738 (¶ 45) (Miss.2008)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id. at 73 (¶ 20) (quoting Rubenstein v. State, 941 So.2d 735, 785 (¶ 224) (Miss.2006)).
ANALYSIS
¶ 13. Victory contends that the circuit court erred by denying his eyewitness-identification jury instruction, maintaining that the jury instruction was necessary to inform the jurors how to weigh inconsistent testimony. Victory lists the alleged inconsistencies: (1) Brunt and Ewing initially did not identify the shooter; (2) Officer Hunter somehow identified Victory as the shooter, but Officer Washington did not see the assailant’s face, and (3) the sisters’ testimony was unreliable. According to the State, an identification instruction is necessary when there is only one eyewitness. Because there were multiple eyewitnesses in Victory’s case, the State maintains that the instruction was not warranted. The State also adds that the jury instruction would have been an improper comment on the evidence.
¶ 14. To support his argument, Victory cites two Mississippi Court of Appeals cases: Grayer v. State, 928 So.2d 905 (Miss.Ct.App.2006), and Brunner v. State, 37 So.3d 645 (Miss.Ct.App.2009). In *374 Grayer, the defendant was charged with burglary of a dwelling. Grayer, 928 So.2d at 906 (¶ 1). The victim caught the burglar in the act and gave the police a description of the suspect. Id. at 906-907 (¶¶ 2-3). Later that night, a suspect matching the description was apprehended by police, and the victim confirmed the suspect as the burglar. Id. at 907-908 (¶ 5). After being identified, the defendant apologized to the victim, essentially confessing to the crime. Id. In addition, the police recovered the victim’s personal items from the defendant’s person. Id. at 908 (¶ 6). At trial, the defendant requested an identification jury instruction, and the circuit court denied the jury instruction. Id. at 906 (¶ 1). The defendant appealed, and the Court of Appeals affirmed. Id.
¶ 15. Citing Francis v. State, 791 So.2d 904 (Miss.Ct.App.2001), the Court of Appeals held that:
Grayer’s identification did not rest solely on the testimony of a single witness. Grayer was in possession of property stolen from the crime scene and apologized to the victim for his actions. As in Francis, the trial court committed no error in refusing to give the identification instruction.
Grayer, 928 So.2d at 909 (¶ 11). Because corroborating evidence identified the defendant as the burglar, the Court of Appeals held there was no error.
¶ 16. In Brunner, the defendant was charged with several crimes against an elderly woman: burglary, aggravated assault, armed robbery, and auto theft. Brunner, 37 So.3d at 646 (¶¶ 1-2). The victim told police that the perpetrator had once worked for her husband. Id. at 647 (¶4). The victim’s husband told police that he had recently fired Brunner for stealing on the job. Id. Independently, the victim identified Brunner in a police line-up. Id. at (¶ 5). At trial, Brunner admitted that he had possession of the victim’s car but claimed that he had received the car from another employee. Id. at (¶¶ 8-9).
¶ 17. On appeal, Brunner argued that the circuit court erred by denying his identification jury instruction. Id. at 648 (¶ 12). Considering the jury instructions given as a whole, the Court of Appeals held that the jury instructions clearly articulated that “the State bore the burden of proving each element of each offense charged beyond a reasonable doubt, which included the identity of the perpetrator.” Id. at 648-649 (¶¶ 13-15). Specifically, the Court of Appeals noted the “State’s burden of proof instruction ... warned the jury to also ‘consider the witness’s ability to observe the matters as to which he or she has testified....’” Id. at 649 (¶ 15). As a result, the Court of Appeals held that the jury instructions given encompassed the issue of misidentification, and the circuit court did not err by denying Brun-ner’s identification jury instruction. Id. at 649-650 (¶¶ 16-19).
¶ 18. The State cites Warren v. State, 709 So.2d 415 (Miss.1998), to support its position. In Warren, the defendant was convicted of voyeurism based on his identification by a single eyewitness. Warren offered an identification jury instruction, and the State objected, arguing that the jury instruction was repetitive and an improper comment on the weight of the evidence. Id. at 420 (¶ 27). The instruction was denied. On appeal, this Court found reversible error, stating: “[The] failure to instruct the jury on the law of identification was error as this case turned on the identification of Warren by a single person.” Id. at 421 (¶ 28) (emphasis added).
¶ 19. Relying on this Court’s decision in Warren, the Court of Appeals has rejected defendants’ argument that they were entitled to an identification instruction. See Tugle v. State, 68 So.3d 691 (Miss.Ct.App. *375 2010) (“a defendant is only entitled to such an instruction if requested and if he is identified as the guilty party by, at most, one witness to his alleged crime”), cert. denied, 69 So.3d 767 (Miss.2011); Powell v. State, 925 So.2d 878 (Miss.Ct.App.2005) (“Unlike the defendant in Warren, Powell’s identification and subsequent conviction did not rest entirely upon the testimony of a single witness.”), cert. denied, 927 So.2d 750 (Miss.2006).
¶ 20. Victory maintains that he is entitled to the identification jury instruction because (1) there is no corroborating evidence in his case, as in Grayer, and (2) no instruction was given in his case which encompassed the issue of misidentification, as in Brunner. But Grayer and Brunner are distinguishable from today’s case.
¶ 21. Grayer and Brunner hinged on the suspect’s identification by one witness. Under Warren, the identification jury instruction is necessary only when the identification of the suspect hinges on one witness. Even still, the Court of Appeals found no error in Grayer where there was other corroborating evidence. In Victory’s case, multiple witnesses identified him as the shooter. Thus, the identification jury instruction was not necessary. It was within the circuit court’s discretion to grant or deny the jury instruction, and the circuit court did not abuse its discretion by denying the jury instruction.
¶ 22. Essentially, Victory’s argument centers around alleged inconsistencies in the witnesses’ testimonies. The law is clear that the weight and credibility to give to the evidence are within the province of the jury. Ewing v. State, 45 So.3d 652, 655 (¶ 15) (Miss.2010). And the circuit court charged the jury with that duty in jury instruction C-l. Additionally, allowing the instruction would have amounted to an improper comment on the evidence. See Miss.Code Ann. § 99-17-35 (Rev.2007) (“The judge in any criminal cause, shall not sum up or comment on the testimony, or charge the jury as to the weight of evidence; but at the request of either party he shall instruct the jury upon the principles of law applicable to the case.”)
CONCLUSION
¶ 23. An identification jury instruction is necessary only when the identification of the suspect hinges on one witness. The jury instruction is not necessary where multiple witnesses identify the suspect or there is other corroborating evidence linking the suspect to the crime. Because multiple witnesses identified Victory as the shooter, the eyewitness-identification jury instruction was not necessary. Additionally, the instruction would have been an improper comment on the weight of the evidence. It was within the jury’s province to determine the weight and credibility to give to the evidence. Accordingly, we find that the circuit court did not abuse its discretion by denying Victory’s requested jury instruction.
¶ 24. COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT II: CONVICTION OF POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY TO THE SENTENCE IMPOSED IN COUNT I.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.

. At trial, the defense presented evidence that Sykes, Brant’s former supervisor, possibly had fired Brant, indicating a motive for Brant to kill Sykes. Brant testified that he was hired to work at a casino through a temporary agency and he was laid off, but that Sykes did not control that decision.

. Although Officer Washington did not see a champagne-colored car at the scene of the shooting, he testified that the police depart *372 ment had received calls that Victory was around town in a champagne-colored car.

. On cross-examination, Deputy Thomas also testified that he had found marijuana at Victory’s home. The defense offered this as Victory's motive for fleeing the home.