# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00323-COA

**ARLAND OMAR MORRIS**                                                                  **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                  **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/11/2020 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/01/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.    Arland Morris was indicted for one count of sexual battery and two counts of touching of a child for lustful purposes. After a jury trial, he was convicted of two counts of touching a child for lustful purposes, and the sexual-battery charge was passed to the files. The trial court sentenced Morris to five years for each count to be served concurrently in the Mississippi Department of Corrections. On appeal, Morris claims the trial court erred by giving jury instruction S-9 and by refusing proposed jury instruction D-XI. Finding no reversible error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.   In July 2017, twelve-year-old Jane[1] lived with her mother and brother in Gulfport, Mississippi. Thirty-nine-year-old Morris had been in a relationship with Jane's mother for approximately three months. Although he did not live with Jane's mother, he occasionally spent the night and babysat Jane and her brother. On July 19, 2017, Morris took Jane into her mother's bedroom, removed Jane's clothes, and then removed his clothes. Jane began crying because she did not know what was happening. Then Morris touched Jane's chest and vagina with his hand. According to Jane, Morris asked her to touch his "private part," but she refused. Afterwards, Jane went to her bedroom and locked the door. Initially, Jane did not tell her mother what had happened because she was afraid that Morris would hurt her. Jane and her brother testified that on another occasion, Morris tried to kiss Jane while they were cleaning his car in the garage. It is unclear exactly when the incident occurred.

¶3.   While Jane was on a trip with her father, she called her mother and told her what had happened with Morris. When Jane returned home, they went to the police department.[2] Jane was referred to the Children's Advocacy Center for a forensic interview. During the interview on August 10, 2017, Jane stated that Morris had touched her.

¶4.   In November 2017, Jane was admitted to Memorial Behavioral Health after she attempted to commit suicide. Kimberly Morgan, a psychiatric mental health practitioner, treated Jane from November 16, 2017, until she was discharged on November 22, 2017.

---

[1] We use pseudonyms to protect the minor victim's identity.

[2] Jane testified that the kissing incident occurred before they went to the police.

During treatment, Jane stated that she had been molested by her mother's boyfriend. Specifically, she stated that "he had touched her privates." Morgan diagnosed Jane with "major depressive disorder, sexual abuse of a child, and parent/child conflict." At trial, Morgan testified that she believed Jane's symptoms and behaviors were consistent with a child that had been sexually abused.

¶5.     Morris testified in his defense and suggested that Jane's allegations were made in retaliation because Jane's mother found out that he had a wife and "didn't take it very well." Morris admitted that he had stayed at the house alone with Jane but denied touching her. He also denied trying to kiss her.

¶6.     After considering the evidence presented at trial, the jury convicted Morris of two counts of touching a child for lustful purposes. Now Morris appeals claiming the court erred by giving jury instruction S-9 and refusing proposed jury instruction D-XI.

## STANDARD OF REVIEW

¶7.     The grant or denial of a jury instruction is reviewed for an abuse of discretion. *Victory v. State*, 83 So. 3d 370, 373 (¶12) (Miss. 2012). "It is well-established that 'jury instructions must be read as a whole to determine if the instructions were proper.'" *Pitts v. State*, 291 So. 3d 751, 757 (¶33) (Miss. 2020) (quoting *Sharkey v. State*, 265 So. 3d 151, 156 (¶19) (Miss. 2019)). "If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Id*. at 755 (¶17) (quoting *Victory*, 83 So. 3d at 373 (¶12)).

## DISCUSSION

3

¶8.    Morris claims that the trial judge erred by giving jury instruction S-9.  Instruction S-9 stated, "The [c]ourt instructs the Jury that the uncorroborated testimony of a sex-crime victim is sufficient to support a conviction if accepted as true by the finder of fact."  Morris also claims that the trial judge should have given proposed jury instruction D-XI.  Proposed instruction D-XI stated, "The [c]ourt instructs the Jury that uncorroborated testimony of a prosecutrix should be examined closely and scrutinized with caution."

¶9.    Morris asserts that instruction S-9 constituted an improper comment on the weight of the evidence and shifted the burden of proof from the State to the defendant.  However, in *Pitts v. State*, 291 So. 3d 751 (Miss. 2020), an identical instruction was given at trial.  *Id.* at 757 (¶30).  On appeal, Pitts argued that the instruction "was peremptory in nature, constituted an improper comment on the evidence, was argumentative, and it encouraged circumvention of the [S]tate's obligation to prove guilt beyond a reasonable doubt."  *Id*. at (¶32).  Our supreme court held that the trial court did not abuse its discretion by giving the instruction.  *Id*. at 759 (¶39).  The supreme court noted that the instruction "did not instruct the jury on how to weigh [the victim's] testimony."  *Id.* at 758 (¶36).  "Rather, [it] properly allowed the jury to determine what weight and credibility to give [the] testimony."  *Id*.  The supreme court noted that the "if accepted as true by the finder of fact" language allowed the jury "to accept or reject [the] testimony, especially in light of other instructions given."  *Id*.  In another case, this Court held that an identical instruction "did not comment on the weight of the evidence or tell the jury how to weigh the credibility of the [victim's] testimony."  *Parks v. State*, 228 So. 3d 853, 871 (¶71) (Miss. Ct. App. 2017).  "Instead, [the instruction] simply

4

conveyed to the jury that, if they found [the victim's] testimony true, even if no corroborating evidence existed, they could find that the testimony supported [the defendant's] conviction." *Id.*

¶10. Morris also asserts that instruction S-9 was not a fair and complete statement of the law whereas his proposed instruction D-XI was a proper and complete statement of the law. However, in *Pitts*, our supreme court held that an instruction identical to S-9 "reflect[ed] an accurate statement of the law." *Pitts*, 291 So. 3d at 757-58 (¶34).

¶11. Furthermore, in *Morgan v. State*, 995 So. 2d 812, 816 (¶11) (Miss. Ct. App. 2008), the appellant claimed that the trial court erred by denying an instruction similar to proposed instruction D-XI. The instruction in *Morgan* stated, "The court instructs the jury that the uncorroborated testimony of a victim should be examined closely and be scrutinized with caution." *Id.* This Court noted that Morgan had not presented "any authority that specifically mandate[d] such an instruction." *Id.* Likewise, Morris has not presented any authority mandating proposed instruction D-XI.

¶12. Finally, we note that the jury was told not to "single out one instruction alone as stating the law but . . . consider [the] instructions as a whole." They were also told that it was their "exclusive province to determine the facts in [the] case and to consider and weigh the evidence for that purpose." And they were instructed of the State's burden of proof and that they should not "single out any certain witness or individual point or instruction and ignore the others." The instructions, read as a whole, fairly announce the law of the case and create no injustice. Therefore, the trial court did not abuse its discretion in giving instruction S-9

and refusing proposed instruction D-XI.

¶13.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.  WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY McDONALD, J. SMITH, J., NOT PARTICIPATING.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶14.    For the reasons stated in my special concurrence opinion in *Bliss v. State*, 2019-KA-01617-COA, 2021 WL 671533, at *6-7 (¶¶28-31) (Miss. Ct. App. Feb. 22, 2021) (motion for rehearing pending), I write separately to address my concerns of the jury instruction, S-9, provided in this sexual battery case. Again, although the Mississippi Supreme Court has approved such instructions in *Pitts v. State*, 291 So. 3d 751, 757-59 (¶¶30-39) (Miss. 2020), I must highlight that an instruction such as this is undeniably problematic because it unfairly highlights a victim's testimony, potentially confuses or misleads jurors, and is potentially irrelevant to a jury's function as a fact finder. As I stated in *Bliss*, the better practice would be to prohibit such clearly impermissible comments on the evidence.

**McDONALD, J., JOINS THIS OPINION.**